150 August 12, 2026 No. 762

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Peter BRIGGS,
Richard E. Cave, Jane C. Gibbons, Craig McClanahan,
Katherine Guptill, Ken Guptill, Julie D. Reading,
Jane M. Fitzpatrick, Mitchell Moore, Gary Weske,
Linda Fender, Darrell Fender, Douglas Palmer,
Jayne Palmer, Olena Strozhenko, Nadine Scott,
Jerry Merritt, Lorin J. Lynch, and Zane Kesey,
*Plaintiffs-Appellants*
*Cross-Respondents,*
*and*
Anthony D. SCHAUERMANN,
*Plaintiff,*
*v.*
LINCOLN COUNTY,
and Curtis L. Landers, Lincoln County Sheriff,
in his official capacity for Lincoln County Sheriff's Office,
Licensing Authority under LCC Ch. 4,
*Defendants-Respondents*
*Cross-Appellants.*

Lincoln County Circuit Court
22CV38244; A183535

Joseph C. Allison, Judge pro tempore.

Argued and submitted May 20, 2025.

Heather A. Brann argued the cause for appellants-cross-respondents. Also on the briefs was Heather A. Brann PC.

Emily M. Matasar argued the cause for respondents-cross-appellants. Also on the briefs was Christopher D. Crean and Beery, Elsner & Hammond, LLP.

Before Ortega, Presiding Judge, Hellman, Judge, and O'Connor, Judge.

HELLMAN, J.

On appeal, affirmed; on cross-appeal, reversed and remanded.

**HELLMAN, J.**

This case involves Lincoln County's short-term residential rental licensing program. Plaintiffs sought declaratory and injunctive relief in circuit court against Lincoln County and the Lincoln County Sheriff, who issues licenses under the program (collectively, the county), challenging the program under provisions in ORS chapter 215 and under the Oregon Constitution on vagueness grounds. On cross-motions for summary judgment, the circuit court ruled in favor of the county on plaintiffs' statutory claims. On plaintiffs' constitutional claims, the court concluded that three provisions in the short-term rental program were invalid. The court concluded that the sentence, "Events, such as weddings, rehearsal dinners, and similar activities are prohibited," in Lincoln County Code (LCC) 4.440(7)(b), was unconstitutionally vague under Article I, section 20, of the Oregon Constitution, and that LCC 4.445(3) and (4) were unconstitutionally vague and contained an unconstitutional delegation of authority under Article I, section 21, of the Oregon Constitution. Plaintiffs appeal from the judgment, assigning error to the court's dismissal of their statutory claims, and the county cross-appeals from the judgment, assigning error to the court's invalidation of the three provisions.

On plaintiffs' appeal, we conclude that the circuit court did not err and affirm. None of the statutes in ORS chapter 215 that plaintiffs rely on apply to the county's actions in this case because they were not land use decisions. On the county's cross-appeal, we conclude that the circuit court erred in invalidating the three provisions, and reverse and remand.

## I.  BACKGROUND

"When, as here, the facts are not in dispute, we review rulings on cross-motions for summary judgment to determine whether either party is entitled to judgment as a matter of law." *Busch v. Farmington Centers Beaverton*, 203 Or App 349, 124 P3d 1282 (2005), *rev den*, 341 Or 216 (2006). We set out the historical and procedural facts that are pertinent to this appeal below.

        Plaintiffs own residential property located in Lincoln County and have rented those properties as short-term rentals. In 2016, the county adopted Ordinance 487, which established a business licensing program for short-term rentals (STRs),[1] which became LCC 4.405 to 4.460, which is in the chapter of the code containing the county's business regulations. The county included a findings and purpose section, which provides:

    "(1)   The Lincoln County Board of Commissioners finds that:

    "(a)   The growth in the number of short term rental of dwelling units within the County has been accompanied by increased problems of excessive noise, spilled garbage, shortages of parking, and overcrowded accommodations;

    "(b)   The best way to regulate these impacts is to establish conditions for operation of these rentals and to implement a licensing program by the County to ensure compliance with those standards; and

    "(c)   The conditions established herein will allow operation of such rentals in a manner that respects and protects the livability of the neighborhoods in which these rentals are located.

    "(2)   The purpose of LCC 4.405 through 4.460 is to provide for the peace, health, safety and livability of residents of, and visitors to, Lincoln County. This is not a land use ordinance and is not made a part of Lincoln County Code Chapter 1, Land Use Planning."

LCC 4.405. The county updated that program three separate times with Ordinances 490, 509, and 523.

        Ordinance 523, which was adopted in October 2021, significantly amended the program. Four of those amendments we take specific note of for purposes of this appeal: First, the ordinance required the county to establish seven

---

    [1] "Short Term Rental" is defined as "the renting of a dwelling unit (including any accessory guest house on the same property) to any person(s) on a day to day basis or for a period of time of up to thirty (30) consecutive nights." LCC 4.415(10). The STR program applies to the unincorporated areas of the county and does not apply to "Bed and Breakfast Inns, Hotels, Lodges, Motels, Resorts, Recreational Vehicle Parks, Campgrounds, or other similar lodging units which are regulated by LCC Chapter 1." LCC 4.410. LCC chapter 1 contains the county's comprehensive plan and zoning regulations.

geographical subarea boundaries for STR licenses by a Board of Commissioners order and, within each subarea, limit the number of STR licenses that can be issued for the subarea and maintain a "waitlist" for prospective licenses to be chosen by lottery when one becomes available. LCC 4.420(4), (5). That provisions states, "This will reduce the concentration of short term rentals in some areas and allow spreading of the units to other areas." LCC 4.420(4).

Second, the ordinance added a prohibition on "[e]vents, such as weddings, rehearsal dinners, and similar activities" to the provision setting maximum occupancy limits for STRs. LCC 4.440(7)(b).

Third, the ordinance amended the complaint procedures applicable to STRs by adding a process for a complaining party to submit a complaint to the Licensing Authority, which it is directed to investigate and, if a violation is found, may require the STR owner to appear for an informal hearing before the Hearings Officer. LCC 4.445(3). That provision also provides that "[a]uthority is specifically delegated to County Counsel's Office to adopt administrative procedures for the hearing, including report requirements, fees, hearing procedures and notice, evidentiary requirements, standard of review and decision, and enforcement options for this administrative process." LCC 4.445(3). Under LCC 4.445(4), "[a]ppeals from a decision of the Hearings Officer are made to Circuit Court." That process is separate from the county's enforcement code in LCC chapter 10, and from procedures to revoke, cancel, or deny renewal of a STR license in LCC 4.450. *See* LCC 4.445(3) ("Nothing in this administrative procedure precludes the County and the Licensing Authority from utilizing other enforcement actions as authorized in this Chapter and LCC Chapter 10."); LCC 4.445(5) ("This procedure is separate from but complementary with the procedures used to revoke, cancel or deny renewal of a license, LCC 4.450.").

Fourth, and finally, the ordinance further provided, relative to its specific delegations of authority:

"The Lincoln County Licensing Authority is, and County Counsel's Office and the Onsite Waste Management Division of the Department of Planning and Development

as specifically authorized in the Chapter are, delegated the authority and responsibility to adopt rules, requirements, procedures, forms and practices consistent with the overall intent of this Chapter, to implement, administer, and operate the licensing program for the County. All fees associated with the program shall be set by separate Order of the Board of Commissioners."

LCC 4.456.

The county also adopted a series of resolutions that imposed and then extended a temporary prohibition on the Lincoln County Sheriff from issuing new STR licenses (the Resolutions). And, in February 2023, the county issued Order 01-23-037 (the Order), which established the seven subarea boundaries and set the maximum allowable STR licenses for each subarea.

In November 2021, plaintiffs sought review of Ordinance 523 at the Land Use Board of Appeals (LUBA). In its final opinion and order, LUBA determined that Ordinance 523 was not a land use regulation and that it lacked jurisdiction over the matter. LUBA transferred the case to circuit court. *Briggs et al. v. Lincoln County*, ___ Or LUBA ___ (LUBA No. 2021-113, Feb 10, 2022) (*Briggs Ordinance*) (slip op at 13, 14). No one sought judicial review of LUBA's order.

Also in November 2021, Lincoln County voters approved Ballot Measure 21-203, which amended the STR program and, as relevant on this appeal, defined STRs as not residential uses and made existing licensed STRs nonconforming uses in county residential zones R-1-A, R-1, and R-2. The ballot measure was challenged in both circuit court and LUBA. Ultimately, both the circuit court and LUBA concluded that jurisdiction was exclusive to LUBA. LUBA then issued its final opinion and order invalidating the ballot measure because it violated ORS 215.130(5) and is preempted by ORS 215.130. *Briggs et al. v. Lincoln County*, ___ Or LUBA ___ (LUBA Nos. 2021-118/2022-030, Aug 8, 2022) (*Briggs Ballot Measure*) (slip op at 20, 23). No one sought judicial review of LUBA's order invalidating the ballot measure.

In the circuit court after LUBA transferred this case, plaintiffs ultimately sought declaratory and

injunctive relief from Ordinances 487, 490, 509, and 523 (the Ordinances), the Resolutions, and the Order.[2] Specifically, plaintiffs alleged in their claims that those county actions violate and are preempted by ORS 215.130(5), were enacted in violation of the processes required by ORS 215.503 and ORS 215.223, and are unconstitutionally vague.

Plaintiffs and the county cross-moved for summary judgment, and the circuit court issued a letter opinion and order. Aside from their claims of unconstitutional vagueness, the court granted summary judgment to the county. It made the following conclusions about plaintiffs' statutory claims: (1) exclusive jurisdiction lies in LUBA to review any land use decision; (2) if the county's regulations are not zoning ordinances, then ORS 215.223 does not apply; (3) if the county's regulations do not relate to comprehensive plans, land use planning, or zoning, then ORS 215.503 does not apply; and (4) ORS 215.130(5) only applies if the county's regulation is a zoning or land use regulation. The court summed up the problem: "This court only has jurisdiction to hear the claims if the ordinances are not land use decisions, but if the ordinances are not land use decisions, then the statutes upon which the claims rest do not apply to those ordinances." On that basis, the court granted summary judgment to the county on the statutory claims.

With regard to plaintiffs' vagueness claims under the Oregon Constitution, the court first noted that plaintiffs conceded that their constitutional claims were brought only under the Oregon Constitution. The court concluded that three provisions in Ordinance 523 were invalid under Article I, sections 20 and 21. Specifically, the court invalidated the sentence that reads, "Events, such as weddings, rehearsal dinners, and similar activities are prohibited," in LCC 4.440(7)(b) (the Events provision) as unconstitutionally vague under Article I, section 20, and invalidated LCC 4.445(3) and (4) as an unconstitutional delegation and unconstitutionally vague under both Article I, sections 20 and 21. We discuss the circuit court's opinion about those provisions in more detail in our analysis.

---

[2] Although plaintiffs included general discussion of the Order in their second amended complaint, plaintiffs did not separately challenge the Order in its claims for relief, having appeared to treat it the same as the Resolutions.

Plaintiffs appeal from the court's dismissal of their statutory claims, and the county cross-appeals from the court's invalidation of the three provisions in Ordinance 523.

## II.   PLAINTIFFS' APPEAL

On appeal, plaintiffs raise four assignments of error, challenging the court's dismissal of their claims that are based on provisions in ORS chapter 215.[3]

### A.   *ORS 34.102*

In their first assignment of error, plaintiffs argue that the circuit court erred in not referring questions of jurisdiction to the Court of Appeals under ORS 34.102 and instead concluding that it lacked jurisdiction to review the county's actions for compliance with ORS chapter 215.[4] But the circuit court did not determine that it lacked jurisdiction to review the county's actions. Instead, consistent with LUBA's earlier opinions, the circuit court determined that the county's challenged actions were not land use decisions. The circuit court further determined that the statutes on which plaintiffs relied—ORS 215.130(5), ORS 215.223, and ORS 215.530—only applied to land use decisions. As a result, those statutes were inapplicable to the county's challenged actions. Thus, the circuit court granted summary judgment to the county because, as a matter of law, plaintiffs had not put forth a valid legal basis for their claims. Based on the circuit court's decision, there was nothing to refer to the Court of Appeals.[5]

---

[3] We note that, in their briefing, plaintiffs often refer to ORS 215.503 as "Measure 56." Ballot Measure 56 was a ballot measure referred by the legislature and approved by the voters in 1998 and which substantially amended ORS 215.503, as well as added other statutes to ORS chapters 197, 227, and 268. *See* Or Laws 1999, ch 1. We caution against continuing to use old general references—particularly a reference to a ballot measure approved over 25 years ago—because it is not helpful to our review, as it causes confusion and does not inform the court which statutory provision is at issue.

[4] Among other things, ORS 34.102 allows for LUBA to transfer a case to the circuit court, or for the circuit court to transfer a case to LUBA, if it determines that jurisdiction properly lies in the other venue. ORS 34.102(3), (4). Additionally, ORS 34.102(5) provides a mechanism for the circuit court and LUBA to refer cases to us if there is a dispute as to whether jurisdiction exists.

[5] We note that the circuit court did incorrectly state that it did not have jurisdiction to determine whether the county's actions were land use decisions.

To be sure, the circuit court approached the jurisdictional issue in a somewhat roundabout way and did not spell out each step of the analysis in the same way that we have here. However, when the opinion and order is read in its entirety, and in context of the general judgment, the circuit court plainly exercised its jurisdictional authority to consider the merits of plaintiffs' claims. Because the premise underlying plaintiffs' first assignment of error is incorrect, that assignment of error provides no basis for relief.

B.   *Applicability of ORS 215.130(5) and ORS 215.503*

In their second and third assignments of error, plaintiffs argue that the circuit court erred in ruling that ORS 215.503 and ORS 215.130(5) apply only to land use decisions.[6] Before we proceed to the merits of those assignments of error, we resolve two issues that are common between them. First, in both assignments of error, plaintiffs maintain that the circuit court concluded that it lacked jurisdiction to consider their claims. As we explained above, that is an incorrect characterization of the circuit court's ruling, and we do not further engage with those arguments. Instead, we analyze plaintiffs' remaining challenges to the circuit court's summary judgment rulings.

Second, at times plaintiffs' briefing appears to suggest that the county's challenged actions could be considered land use decisions. To the extent that plaintiffs' make that argument, we reject it. Past litigation before LUBA and this court has made clear that the county's challenged actions are not land use decisions. *See Akiyama v. Tillamook County*, 333 Or App 315, 327-28, 554 P3d 268, *rev den*, 373 Or 154 (2024) (rejecting argument that Tillamook County's STR licensing program rezoned property and thus was within LUBA's

---

However, LUBA had already determined that Ordinance 523 and the Order were not land use decisions. *Briggs Ordinance*, ___ Or LUBA at ___ (slip op at 13) (Ordinance 523); *see also Dean et al. v. Lincoln County*, ___ Or LUBA ___ (LUBA No 2023-020, Sept 20, 2023), *aff'd*, 329 Or App 811 (2023) (nonprecedential memorandum opinion) (the Order). And, more importantly, the court did not dismiss for lack of jurisdiction; it exercised jurisdiction and granted summary judgment to the county because the statutes on which plaintiffs rested their claims did not apply.

[6] Plaintiffs do not challenge the circuit court's determination that ORS 215.223 applies only to zoning ordinances or the court's grant of summary judgment to the county on that basis.

jurisdiction; affirming the conclusion in *Dean v. Lincoln County*, 329 Or App 811 (2023) (nonprecedential memorandum opinion) that the Order establishing the Lincoln County STR program subareas was not a land use decision); *Briggs Ordinance*, ___ Or LUBA at ___ (slip op at 13) (determining in an unchallenged final order that Ordinance 523 was not a land use decision). Having made those two points, we turn to the merits of plaintiffs' assignments of error.

1.   *ORS 215.503*

In their second assignment of error, plaintiffs assert that the Ordinances, Resolutions, and Order at issue "rezoned" plaintiffs' property under ORS 215.503(9)(b) by "limiting land uses previously allowed in the affected zone," because STRs in residential zones were previously allowed outright by the zoning code, LLC chapter 1. Relying on *Akiyama*, plaintiffs assert that a "rezoning" under ORS 215.503(9)(b) is not necessarily co-extensive with a "land use decision" under ORS 197.015(10)(a)(A). That is, plaintiffs take the position that there can be a rezoning under ORS 215.503(9)(b) that does not qualify as a land use decision, but which nonetheless triggers application of other provisions in ORS 215.503. Specifically, plaintiffs argue that they were entitled to review of the county's actions for failure to comply with ORS 215.503(4), which requires special notice when an ordinance proposes to rezone the property, and for failure to comply with ORS 215.503(2), which requires zoning to be adopted by an ordinance. As a result, plaintiffs' claim that the circuit court erred in determining that ORS 215.503(9) did not apply to the county's challenged actions and granting summary judgment to the county on that basis.

The circuit court did not err because there was no "rezoning" of plaintiffs' property. Zoning (and "rezoning") are terms of art that apply to specific types of land use decisions. *See* ORS 197.015(10)(a)(A) (providing that a "land use decision" includes any decision by a local government "that concerns the adoption, amendment, or application of" the statewide planning goals, a provision of the county's comprehensive plan, a land use regulation, or a new land use regulation); ORS 197.015(11) (providing that a "land use regulation" includes a local government's "*zoning ordinance*, land

division ordinance \*\*\* or similar general ordinance establishing standards for implementing a comprehensive plan" (emphasis added)). The statutes in ORS chapter 215 "generally govern[] county zoning and planning, and the authority of counties to zone land." *Morgan v. Jackson County*, 290 Or App 111, 116, 414 P3d 917, *rev den*, 362 Or 860 (2018) (internal quotation marks and citations omitted). ORS 215.503(9) provides a definition of rezoning for ORS 215.530: "property is rezoned when the governing body of the county" either "[c] hanges the base zoning classification of the property" or "[a] dopts or amends an ordinance in a manner that limits or prohibits land uses previously allowed in the affected zone." Thus, ORS 215.503(9) would apply to the county's actions in this case *only if* the county made a land use decision to rezone property. But as we previously concluded, the county's actions here were *not* land use decisions.

Contrary to plaintiffs' argument, *Akiyama* does not carve out a type of rezoning that exists outside of land use decisions. Instead, that opinion confirms that "rezoned" under ORS 215.503(9) is co-extensive with the definition of land use decision in ORS 197.015(10), or land use regulation in ORS 197.015(11), which specifically includes zoning ordinances. *See Akiyama*, 333 Or App at 328 ("[W]e remain persuaded that LUBA correctly concluded that ORS 215.503(9) is irrelevant to the determination whether a regulation is a zoning ordinance."). In *Akiyama*, we explained that "land use" as used in ORS 215.503(9) does not "alter existing law on what constitutes a land use decision and what does not. That is, 'land uses previously allowed' in ORS 215.503(9) refers to uses of property as allowed by the county's land use laws and zoning categories." 333 Or App at 328. We further explained that ORS 215.503 was not intended "to define (or redefine) what it means for property to be rezoned, the Voter's Pamphlet indicates that the purpose of the measure was to ensure that property owners received notice of *existing* types of land-use changes." *Id*. at 328-29 (emphasis added). Thus, under *Akiyama*, ORS 215.503(9) does not create a new or different category for "rezoning" that falls outside existing land use decisions. Because ORS 215.503(9) did not apply to the county's challenged actions, the circuit court did not err

in granting summary judgment to the county on that basis. We thus reject plaintiffs' second assignment of error.

2.  *ORS 215.130(5)*

In their third assignment of error, plaintiffs assert that the circuit court erred in concluding that ORS 215.130(5) only applied to county actions that were land use decisions and granting summary judgment to the county on that basis. To support their argument, plaintiffs point to the phrase "lawful requirement" in the statute, which, they argue, applies to county decisions in general, and the fact that not every sentence in the statute contains an explicit link to a land use decision.

We disagree with plaintiffs' interpretation of ORS 215.130(5). We start with the text of the statute, which provides:

> "The lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued. Alteration of any such use may be permitted subject to subsection (9) of this section. Alteration of any such use shall be permitted when necessary to comply with any lawful requirement for alteration in the use. Except as provided in ORS 215.215, a county shall not place conditions upon the continuation or alteration of a use described under this subsection when necessary to comply with state or local health or safety requirements, or to maintain in good repair the existing structures associated with the use. A change of ownership or occupancy shall be permitted."

As established in the first sentence, ORS 215.130(5) applies when there has been an "enactment or amendment" of a "zoning ordinance or regulation." The remainder of the statute provides limits on county actions vis a vis previously "lawful uses" after that triggering condition.[7] That

---

[7] ORS 215.130(5) "describes an exception to the application of zoning ordinances for a use that is inconsistent with zoning but that was lawfully in existence before the enactment or amendment of the ordinance, which our case law describes as a 'nonconforming use.'" *Deschutes County v. Pink Pit, LLC*, 306 Or App 563, 573, 475 P3d 910 (2020). "Generally, '[a] lawful nonconforming use of land is one that is contrary to a land use ordinance but that nonetheless is allowed to continue because the use lawfully existed prior to the enactment of the ordinance.'" *Morgan*, 290 Or App at 114 (quoting *Rouge Advocates v. Board of Comm. of Jackson County*, 277 Or App 651, 654, 372 P3d 587 (2016), *rev dismissed*, 362 Or

interpretation is reinforced by the repeated references in the remainder of the text to the "use" described by the first sentence. *See* ORS 215.130(5) ("Alteration of any such use \*\*\*. Alteration of any such use \*\*\*. Except as provided in ORS 215.215, a county shall not place conditions upon the continuation or alteration of a use described under this subsection \*\*\*. A change of ownership or occupancy shall be permitted.).

    Because the county's actions did not rezone property and were not land use decisions, ORS 215.130(5) does not apply to the county's actions. *See Morgan*, 290 Or App at 117 (concluding that "lawful use" in ORS 215.130(5) is a lawful use "under the prior zoning or land use regulations. Put simply, the provision concerns zoning and land use regulation.").[8] As such, ORS 215.130(5) does not apply to the county's actions here, and the circuit court did not err. We thus reject plaintiffs' third assignment of error.

C.   *Issue Preclusion*

    In their fourth assignment of error, plaintiffs argue that the circuit court erred in failing to apply issue preclusion to issues resolved by LUBA in *Briggs Ballot Measure*, which invalidated the ballot measure passed by the county's voters. Specifically, plaintiffs sought a ruling from the circuit court that the following issues were preclusively resolved against the county: (1) short term rental of dwellings is a use allowed outright under the county's zoning code; (2) as a preexisting lawful use under the zoning code, the county cannot get around ORS 215.130(5) by ending licenses for STRs; and (3) ending a license for an STR when ownership transfers violates ORS 215.130(5).

    Issue preclusion applies when (1) "[t]he issue in the two proceedings is identical"; (2) "[t]he issue was actually

---

269 (2017)). "[A] use that is lawful under existing zoning is not a nonconforming use." *Deschutes County*, 306 Or App at 575.

    [8] In addition, we observe that the requirement that owners obtain an STR license and the limits on the maximum number of licenses available in each geographical subarea are part of a licensing system and "[g]enerally, business or occupational licensing is a system that does not regulate with regard to particular locations in the use of real properties," and, as such, are "not the sort of 'law' that is at issue when ORS 215.130(5) refers to 'lawful use of any building, structure or land.'" *Morgan*, 290 Or App at 118.

litigated and was essential to a final decision on the merits in the prior proceeding"; (3) "[t]he party sought to be precluded has had a full and fair opportunity to be heard on that issue"; (4) "[t]he party sought to be precluded was a party or was in privity with a party to the prior proceeding"; and (5) "[t]he prior proceeding was the type of proceeding to which this court will give preclusive effect." *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993).

The circuit court did not err when it declined to apply issue preclusion in this case. That is because the issues in this litigation were not identical to those in *Briggs Ballot Measure*, nor were they litigated and essential to a final decision in the prior proceeding.

First, in *Briggs Ballot Measure*, LUBA did not determine that short term rental of dwellings is a use allowed outright under the county's zoning code or that short term rental of dwellings was a "lawful use" under ORS 215.130(5). Rather, LUBA merely assumed those conditions existed for purposes of deciding the case because the ballot measure itself stated that STRs were "nonconforming uses." *See Briggs Ballot Measure*, ___ Or LUBA at ___ (slip op at 11) ("We assume for purposes of this decision, and particularly our application of ORS 215.130(5), that BM 21-203 accurately categorizes STRs as nonconforming uses as that term is used in ORS 215.130(5)."); *id.* at ___ (slip op at 15) ("BM 21-203 therefore presumes that prior to its enactment, STRs were allowed uses in those zones [R-1-A, R-1, and R-2] and for purposes of this opinion, we assume that is correct.").

Second, LUBA's analysis in *Briggs Ballot Measure* under ORS 215.130(5) is not applicable to the county's actions in this case, because the county's actions here did not involve land use decisions. In fact, LUBA recognized as much in *Briggs Ballot Measure* when it stated that the amendments in Ordinance 523, which it had decided was not a land use decision in *Briggs Ordinance*, "are qualitatively different than those voters adopted in BM 21-203 and we do not address them further." *Briggs Ballot Measure*, ___ Or LUBA at ___ (slip op at 16): *see also Briggs Ordinance*, ___ Or LUBA at ___ (slip op at 10) ("As explained above,

however, Ordinance 523 is not a 'zoning ordinance or regulation' and, therefore, ORS 215.130(5) does not apply and does not bar the county from restricting the transfer of licenses upon the change of ownership of property. Furthermore, failure to have a required business license is not relevant to a determination of whether a land use is legally nonconforming for zoning purposes.").

Put simply, LUBA did not fully and finally resolve any issues presented in this case in *Briggs Ballot Measure*, and the circuit court did not err in failing to give it preclusive effect. We thus reject plaintiffs' fourth assignment of error.

## III.   THE COUNTY'S CROSS-APPEAL

On cross-appeal, the county challenges the circuit court's invalidation of the Events provision in LCC 4.440(7)(b), and its invalidation of LCC 4.445(3) and (4).[9]

A.   *Vagueness and Delegation under Article I, sections 20 and 21*

Before we turn to the issues in this appeal, we address plaintiffs' arguments based on a lack of fair notice. The circuit court determined that those arguments failed as a matter of law because plaintiffs only brought their challenge under the Oregon Constitution, and plaintiffs did not challenge that ruling on appeal. *See, e.g.*, *State v. Krueger*, 208 Or App 166, 171, 144 P3d 1007 (2006) (explaining that fair notice is a challenge under the Due Process Clause of the Fourteenth Amendment to the United States Constitution). As a result, we do not address any arguments regarding the lack of fair notice in our opinion.

As applicable here, under the Oregon Constitution, a statute may be unconstitutionally "vague" on its face if it is "so vaguely crafted as to permit arbitrary or unequal application and uncontrolled discretion, in violation of Article I, sections 20 and 21."[10] *Id.* at 170. "[T]o prevail on a facial

---

[9]  We reject plaintiffs' preservation challenge to the county's arguments without further explanation.

[10]  Article I, section 20, provides that "[n]o law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." Article I, section 21, provides, in relevant

vagueness challenge, the defendant must demonstrate that the statute 'is unconstitutionally vague in all of its possible applications.'" *Id*. at 171 (quoting *State v. Chakerian*, 325 Or 370, 381, 938 P2d 756 (1997)). "That is to say, if we can identify conduct that the statute clearly proscribes, then it is irrelevant that the defendant is able to identify problems concerning how the statute might be applied to other conduct." *Id*.; *see also Ceaser v. Dept. of Human Services*, 311 Or App 702, 713, 493 P3d 66 (2021) (applying same to administrative rule).

Unconstitutional delegation of legislative authority is also implicated in this case. Generally, a claim of unconstitutional delegation of legislative power refers to situations in which the Oregon Legislature has delegated authority. Although the circuit court relied on the concept of unconstitutional delegation of legislative authority, neither the circuit court nor either party on appeal has explained why or how Article I, section 21, applies to a delegation made by a county, which is governed by county charter (if the county has one) or by statute.[11] *See, e.g.*, ORS 203.035 (setting out power of governing body of county over matters of county concern); ORS 203.111 (providing that county governing body "shall exercise general legislative authority over all matters of county concern"); ORS 203.240 (setting out the organization, powers, and duties of a county board of commissioners). However, for purpose of this opinion, we assume without deciding that a challenge to a county's governing

---

part, that "nor shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution."

[11] *Pre-Hospital Medical Services, Inc. v. Malheur County*, 134 Or App 481, 896 P2d 585 (1995), does not directly address whether a challenge to delegation by a county's governing board can be brought under Article 1, section 21, and whether it is analyzed in the same manner as legislative delegation. That case focused on the statutory legislative directives to the county and whether the county enactment honored the legislative policy. Moreover, the analysis did not expressly rely on Article I, section 21. Instead, it relied on *Anderson v. Peden*, 284 Or 313, 325-26, 326 n 10, 587 P2d 59 (1978), which was concerned with due process under the Fourteenth Amendment to the United States Constitution in its discussion of delegation, and *Megdal v. Board of Dental Examiners*, 288 Or 293, 298, 605 P2d 273 (1980), which was concerned with the Oregon Legislature's delegation of its power, as provided in Article IV, section 1, and Article III, section 1. We are unaware of any Oregon case law that touches on application of Article I, section 21, to a county's ordinance as an unlawful delegation of the county's legislative authority over matters of county concern.

body's delegation can be brought under Article I, section 21, and that it is analyzed under the case law applicable to delegation by the Oregon Legislature.

"Three provisions of the Oregon Constitution, taken together, prohibit the delegation of legislative power to make laws." *State v. Davilla*, 234 Or App 637, 645, 230 P3d 22 (2010), *rev den*, 350 Or 717 (2011). Those provisions are Article I, section 21, which provides no law shall be passed that relies on an authority to take effect, except as provided in the Oregon Constitution; Article III, section 1, which provides that the powers of state government is divided into three branches; and Article IV, section 1(1), which provides that the legislative power of the state is vested in the Oregon Legislature.[12] "The purpose of Article I, section 21, is to 'prevent unlawful delegation of legislative authority' to make laws." *Along Came Trudy LLC v. OLCC*, 330 Or App 295, 307, 543 P3d 751, *rev den*, 372 Or 588 (2024) (quoting *Marr v. Fisher et al.*, 182 Or 383, 388, 187 P2d 966 (1947)). However, that prohibition is not absolute. "The legislature may delegate authority to other bodies 'to adopt rules that define or implement broad statutory standards.'" *Id.* (quoting *State v. Long*, 315 Or 95, 101, 843 P2d 420 (1992)). Whether a particular enactment contains an unconstitutional delegation depends on "whether the enactment is complete when it leaves the legislative halls. A legislative enactment is complete if it contains a full expression of legislative policy and sufficient procedural safeguards to protect against arbitrary application." *State v. Self*, 75 Or App 230, 236-37, 706 P2d 975 (1985) (citation omitted); *see also City of Damascus v. Brown*, 266 Or App 416, 443, 337 P3d 1019 (2014) (quoting that standard as a succinct articulation of the task on review).

---

[12] Article III, section 1, provides:

"The powers of the Government shall be divided into three separate branches, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these branches, shall exercise any of the functions of another, except as in this Constitution expressly provided."

Article IV, section 1(1) provides that the "legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives."

B.   *Events Provision in LCC 4.440(7)(b)*

We first address the circuit court's invalidation of the sentence, "Events, such as weddings, rehearsal dinners, and similar activities are prohibited," in LCC 4.440(7)(b). In its letter opinion, the court concluded that the Events provision was unconstitutionally vague under Article I, section 20, because it gave "unbridled discretion" to decide what was prohibited because "event" "could mean any activity on the property. The court further concluded that the limiting terms "weddings" and "rehearsal dinners" means that "events" was defined as "noteworthy happenings" or "social occasions or activities." However, the circuit court concluded those limitations did not cure the vagueness problem, nor could the problem be cured by finding commonalities between weddings and rehearsal dinners. The court also declined to read the Events provision in the context of the Findings and Purpose section, LLC 4.405(1), of the STR program, because that "would create terms in the ordinance that do not exist there."

We conclude that the circuit court erred in invalidating the Events provision based on Article I, sections 20 and 21. As explained above, to be facially invalid, the Events provision must be "'unconstitutionally vague in all of its possible applications.'" *Krueger*, 208 Or App at 171 (quoting *Chakerian*, 325 Or at 381). "That is to say, if we can identify conduct that the statute clearly proscribes, then it is irrelevant that the defendant is able to identify problems concerning how the statute might be applied to other conduct." *Id*. On its face, the Events provision clearly proscribes two types of events—weddings and rehearsal dinners. As such, it is not unconstitutionally vague in all its applications. *See id*. ("[W]hatever vagueness issues may be conjured up in the abstract, the fact remains that the statute clearly applies, for example, to an individual who stands on a street corner and flags traffic for the express purpose of soliciting an act of prostitution."). Because the Events provision clearly proscribes some conduct, plaintiffs' speculation as to the wide range of events or activities that could be implicated by the prohibition does not provide a basis to conclude that the provision is unconstitutionally vague.

Further, the circuit court erred in declining to review the Events provision in the context of other STR provisions, including the Findings and Purpose section, LLC 4.405. "[W]hen evaluating an ordinance for unconstitutional vagueness, we must always examine the words in context. Even words that, by themselves, might otherwise be unclear, may drive clarification from their use in context." *Krueger*, 208 Or App at 171-72.

Here, the Events provision does not appear in isolation; it was expressly made a part of a subsection that addresses STR occupancy limits:

"(7)   Limits on Occupancy. The maximum occupancy for a short term rental unit shall be calculated on the lesser of the following calculations:

"(a)   the request of the applicant for a license;

"(b)   two (2) persons per sleeping area plus two (2) additional persons. *The maximum occupancy at all times shall be limited to two persons per sleeping area plus up to two (2) additional persons. Events, such as weddings, rehearsal dinners, and similar activities are prohibited.* For the purpose of maximum occupancy, those under two (2) years of age shall not be counted. Accessory structures, tents and recreational vehicles and similar sleeping arrangements shall not be used to increase the number of people approved to occupy a short term rental.

"(c)   the occupancy capacity as determined by Onsite Waste Management from review of the ESER required in this section.

"(d)   Notwithstanding the forgoing, no more than 16 persons shall occupy the short term rental unit at any one time except for grandfathered occupancies established under Ordinance # 487.

"(e)   Grandfathered occupancies cannot exceed the capacity of the onsite wastewater system under an Existing System Evaluation Report and a determination made by the Onsite Waste Management Division"

LCC 4.440(7) (emphasis added). Given that context, the Events provision is directed at "events" that exceed the maximum occupancy of an STR; that is, holding an event at an

STR does not excuse the maximum occupancy requirement, which applies "at all times."

With that understanding in place, the list of unfettered discretion concerns of the circuit court disappears. The ordinance expresses a clear policy about the Events provision: it is directed at prohibiting weddings, rehearsal dinners, and similar activities that exceed the maximum occupancy limit. That construction is also supported by the Findings and Purpose section, LLC 4.405(1)(a), which provides that the STR regulations were directed at the "problems of excessive noise, spilled garbage, shortages of parking, and overcrowded accommodations"—all problems associated with too many people occupying an STR. Even if "events," read in isolation poses a constitutional problem, when viewed in context, it is a word clearly tied to gatherings that exceed a maximum occupancy limit. The Events provision is thus not unconstitutionally vague on its face, and the circuit court erred in so concluding.

C.   *Complaint Procedures in LCC 4.445(3) and (4)*

We next address the circuit court's invalidation of LCC 4.445(3) and (4), which were provisions the county included in its complaint procedure. LCC 4.445 provides that complaints "will initially proceed through the informal resolution process provided herein. If the complaint is unresolved, then the more formal process shall be utilized as set forth below[.]" Subsections (1) and (2) describe the informal process of the complainant and contact person for the STR communicating with each other about a complaint. The sections at issue then provide:

"(3) Step Three: Administrative Hearing. If the response from the contact person is not satisfactory, the complaining party may use the County's online complaint system at the county website to lodge a formal complaint or submit a complaint in writing to the Licensing Authority. The complaint shall be investigated by the Licensing Authority. If the Licensing Authority finds there is information, evidence and belief provided by the complainant or otherwise found by the Licensing Authority sufficient to proceed with a determination of a violation of this Chapter, the Licensing Authority may issue a written report and

cite the STR owner to appear before a Hearings Officer designated by the County within 30 days of the complaint to determine if a violation of this Chapter has indeed occurred. If the Licensing Authority does not proceed with the complaint, the matter shall be considered terminated.

"The Hearings Officer shall hold an informal hearing on the matter and issue a final written decision on whether or not a violation has occurred and what action should be taken if there is a violation. Authority is specifically delegated to County Counsel's Office to adopt administrative procedures for the hearing, including report requirements, fees, hearing procedures and notice, evidentiary requirements, standard of review and decision, and enforcement options for this administrative process. A copy of this administrative process shall be posted on the County website.

"Nothing in this administrative procedure precludes the County and the Licensing Authority from utilizing other enforcement actions as authorized in this Chapter and LCC Chapter 10.

"(4)   Appeals from a decision of the Hearings Officer are made to Circuit Court."

LCC 4.445(3), (4). Finally, subsection (5) provides, "This procedure is separate from but complimentary with the procedures used to revoke, cancel or deny renewal of a license, LCC 4.450." LCC 4.445(5).

In its letter opinion, the circuit court concluded that LCC 4.445(3) contains an unconstitutional delegation of authority because the provision is not a complete enactment. The circuit court reached that conclusion because it determined that the provision lacked standards, rules, and/or guidelines to (1) determine who is appointed a hearings officer; (2) conduct of the hearings; (3) circumscribe what a hearings offer may order; (4) guide the County Counsel's Office in the process of adopting procedure; and (5) impose fees or enforcement mechanisms. As a result, the court concluded that LLC 4.445(3) was "an unconstitutional delegation of power to the County Counsel's Office under Article I, section 21," and that "the lack of ascertainable standards for the informal hearing procedure, its consequences, and its participants creates a serious danger of unequal application

of the law, and therefore the court finds the section to be unconstitutionally vague under Article I, section 20[.]"

Assuming without deciding that Article I, section 21, and the case law on delegation of the Oregon Legislature's power, applies here, we conclude that the circuit court erred in invalidating LCC 4.445(3) and (4) under Article I, sections 20 and 21.

As stated above, "[t]he purpose of Article I, section 21, is to prevent unlawful delegation of legislative authority to make laws." *Along Came Trudy LLC*, 330 Or App at 307 (internal quotation marks omitted). "The legislature may delegate authority to other bodies 'to adopt rules that define or implement broad statutory standards.'" *Id.* (quoting *Long*, 315 Or at 101). A legislative enactment is not an unconstitutional delegation "if it contains a full expression of legislative policy and sufficient procedural safeguards to protect against arbitrary application." *Self*, 75 Or App at 236-37. Under those standards, the county did not make an unlawful delegation of its legislative authority of matters of county concern in LCC 4.445(3) and (4).

As with the Events provision, we do not view LCC 4.445(3) and (4) in isolation; we view those provisions in the context of the STR program. That program sets out the legislative policy underlying the program, the licensing scheme, and detailed regulations on the operation of STRs. *See* LCC 4.405 (findings and purpose); LCC 4.420 - .430 (licenses); LCC 4.440 (operating standards). In that context, the delegation in LCC 4.445(3) to the Licensing Authority to investigate complaints and determine if "there is information, evidence and belief" "sufficient to proceed with a determination of a violation of this Chapter" is not an unlawful delegation of legislative authority. The paragraph governing the Licensing Authority's authority with respect to complaints is simply a legitimate delegation to implement the standards provided by the county.

Turning to the delegation to a Hearings Officer, we first find no issue with the existence of the position of Hearings Officer, which LLC 4.445(3) provides will be "designated by the County." The county's designation of a

Hearings Officer is neither vague nor an unlawful delegation because the county has expressly retained the legislative authority to designate that person. We disagree with plaintiffs' argument that the county unlawfully delegated authority to the Hearings Officer, who is directed to "hold an informal hearing on the matter and issue a final written decision on whether or not a violation has occurred and what action should be taken if there is a violation." LCC 4.445(3). LCC 4.445(3) and (4) contain procedural safeguards, including the hearing itself, the requirement of a written decision, and the opportunity to obtain judicial review of the decision by the circuit court. And under LCC 4.445(3), the Hearings Officer's conduct is also subject to rules adopted by the County Counsel's Office.

Finally, we address the delegation to the County Counsel's Office to "to adopt administrative procedures for the hearing, including report requirements, fees, hearing procedures and notice, evidentiary requirements, standard of review and decision, and enforcement options for this administrative process." LCC 4.445(3). The STR complaint procedure reflects the county's completed legislative policy and broad legislative standard to provide an informal procedure by which to review complaints against STRs, without having to initiate a code violation action in circuit court, which is the enforcement scheme set out in LCC chapter 10. As we have stated, "[t]he legislature may delegate authority to other bodies to adopt rules that define or implement broad statutory standards." *Along Came Trudy LLC,* 330 Or App at 307 (internal quotation marks omitted). The delegation to the County Counsel's Office meets that standard, because it is directed to adopt specific types of administrative procedures for the hearing, which are also guided by the county's legislative policy for the complaint proceedings, as well as, by "the overall intent of this Chapter," LLC 4.456. The County Counsel's Office is also directed by the county to make those procedures publicly available on the county's website. LCC 4.445(3). We thus conclude that LLC 4.445(3) and (4) do not contain an unlawful delegation of the county's legislative authority.

For the same reasons, we also conclude that LCC 4.445(3) and (4) are not unconstitutionally vague. Those provisions set out a complete policy and process for complaints against STRs, it is not "so vaguely crafted as to permit arbitrary or unequal application and uncontrolled discretion, in violation of Article I, sections 20 and 21." *Krueger*, 208 Or App at 170.

In sum, the circuit court erred in granting summary judgment to plaintiffs and in denying summary judgment to the county with respect to plaintiffs' constitutional challenges to LCC 4.440(7)(b), and LCC 4.445(3) and (4).

On appeal, affirmed; on cross-appeal, reversed and remanded.